Good morning, your honors. Melissa Baldwin on behalf of the appellant, Jessie Glass. May it please the court, we are asking you to reverse Mr. Glass's convictions and reverse the district court's denial of his motion to suppress. Detective Lawrence used April's allegation that Glass had contraband on his cell phone to secure a residential search warrant. That application omitted that April lodged a very similar allegation in 2017 that Lawrence investigated and found no substantiating evidence for. When the deceptive omissions are corrected, probable cause is wanting for lack of independent corroboration for April's latest allegation. So here Glass established that Lawrence violated Franks v. Delaware because Lawrence, with at least a reckless disregard, intended to mislead the magistrate by omitting crucial information to assess April's credibility and reliability. So he proved that Lawrence was reckless in making these omissions based on circumstantial evidence. We are asking this court to set aside the district court's factual findings on the intent element under the clearly erroneous standard for two reasons. And first is that the district judge labored under an improper conception of the reckless disregard standard under Franks. We should admit we're here under a clearly erroneous standard of review. Correct, your honor. And one of the avenues from which this court finds an error is clearly erroneous under Jimenez v. Mary Washington College is when a district court labored under an improper understanding of a legal principle. And the correct understanding of the reckless disregard principle under Franks is a legal determination. So if you are to determine that the district court applied or labored under the incorrect understanding of reckless disregard, the factual findings made under that incorrect understanding are clearly erroneous and need to be set aside. What was incorrect about the understanding? The district court found that there was no intentional omission and found that there was no recklessness. The error here is in two forms. And one is that the district court... That is the standard, isn't it? A reckless recklessness or not negligence, but recklessness. Right, recklessness. But the district court applied... The district court said recklessness cannot be inferred. So if you look at the exact J.A. 483 where the district court said... Or excuse me, it's J.A. 480. An inference of intentionality is insufficient. Meaning that the district court discounted the amount of circumstantial evidence that the defense presented showing a reckless disregard. And so you look, and so not only did the district court explicitly say an inference of intentionality is insufficient. The district court here heard from both Brown and Lawrence, didn't it? Yes. And Lawrence was the special investigator. And as I understand it, Lawrence was the one that submitted the affidavit. Yes. Am I correct about that? So you have the two individuals most directly involved, Brown and Lawrence. The district court has a hearing. The district court listens to Lawrence. The district court can read the affidavit. And it concluded, Judge Bell concluded that there was no recklessness or intentional omission here. And what, I mean, this seems... Yes. Judge Bell found there was no recklessness here. Seems to be clean. Judge Bell found no that recklessness requires Lawrence be actually aware that the risk would materialize. And that is not the standard for recklessness. And that impermissibly narrows the pool of qualifying conduct. And not only did the district court do that in terms of narrowing the pool of culpable conduct under Franks, but it also discounted the circumstantial evidence. So even applying the normal clearly erroneous standard, Detective Lawrence's testimony in this case was facially incredible and should be set aside on that basis. What? The district court in one breath said that there is no evidence to suggest that Lawrence's testimony... How do you mean it's facially incredible? It is facially incredible that a detective with 20 years of law enforcement experience... Excuse me, counsel. We're going to reverse the district court not only on clearly erroneous fact finding, but we're going to reverse a credibility determination as well? Well, I don't think... I think it's clearly erroneous under either standard, and I think both apply here. I think there is both an incorrect understanding of recklessness, and I think there is facially incredible law enforcement testimony that was erroneously credited. And you can do that by focusing on the district court's order itself, where the district court credited Lawrence's testimony. He didn't believe the 2017 allegation was relevant, but then the district court's own finding was plainly, plainly... That's the district court's word. It is relevant. So I think a law enforcement officer with 20 years of experience who helps other novice officers draft search warrants, who worked on an FBI cyber task force for 10 years, is well aware that the fact the informant tip he's relying on to secure a search warrant came from the same source in his prior investigation turned up no substantiating evidence, knows that that's relevant. Knows that is something that a magistrate judge would want to know. The Supreme Court has made a point of wanting officers to get warrants, and the more obstacles that we throw up in their the more they will seek to circumvent the warrant process. And in addition, the court has made clear that omission cases or that an omission in this case. So you've got the desirability of channeling police into the warrant process and not having them engage in rogue actions and doing this and this without going before a magistrate. And you've got the idea of, you know, that this is an omission case and not a misrepresentation case. And you've got a high standard further under which the fact finding takes place, which is not one of negligence, but which is one of recklessness. So that's a lot of hurdles to overcome, don't you think? Well, I think in the sense that we, yeah, I think a lot of things. But no, in the sense we do, we want law enforcement to get warrants, right? But we want them to get warrants because we want a neutral and detached magistrate to be the one making the assessment on whether or not the historical facts demonstrate probable cause. So what we don't want is what happened here, which is that a detective recklessly takes that constitutional obligation away from the magistrate judge who's unable to fill their role under the Fourth Amendment. And while I want to address the omissions, because while omissions can tend to be a less serious form than false statements, that is not always the case. Just think of exculpatory DNA evidence. So an omission can be just as culpable, just as offensive to the Fourth Amendment as an omission, even though- That really goes to the second prong of Frank's, the materiality prong. And even if we were to agree with you on the issue of recklessness, we would also have to find that had the omissions been included, we would need to reach a probable cause issue as well. Is that right? Yes, Your Honor. Okay. And we would have to find that with the omissions, there would have been a different analysis on the probable cause. So we have to reach both prongs. And we would have to reverse on both prongs. Yes, both prongs have to be shown by preponderance of the evidence. So when you began by saying that this was an issue of law, and therefore in response to Judge Wilkinson's question about standard of review, you said there was a legal error on the first prong. What about on the second prong? What was the error there? Probable cause is a legal issue reviewed de novo. And the issue there is that once the information calling April's credibility and reliability into question is inserted into the affidavit, at that point a reasonably prudent person viewing these historical facts would need some independent police corroboration to believe her latest allegation. And the problem here is the affidavit discloses no such independent corroboration for a reasonably prudent person to credit April's latest allegation. So you think the omission of this one investigation makes all the difference in the probable cause determination? I think it's the most serious. But the other omissions include the estranged wife status, the facts that the prior investigations that were included to cast suspicion on Mr. Glass, the fact that the outcome of those was that he wasn't even arrested in the 26th investigation. So we think the 2017 omission is certainly the most significant factor, and the other omissions demonstrate an overall deceptive pattern. With respect to the 2017 omission, the more previous investigations that are put into the affidavit, this goes to materiality and other points, that could be significantly to Mr. Glass's disadvantage. So even though cases are dismissed, a lot of investigations are discontinued and the cases are dismissed, it doesn't imply that there's some sort of innocence. There can be a million reasons to dismiss something, and the most common one being that the witness has gotten cold feet or what have you. But isn't it quite possible that if all of these different investigations were included, including the 2017, that that would have worked to Mr. Glass's disadvantage? Because a magistrate would say, my gosh, we've had these different investigations of this over a period of years where there's smoke, there must be fire. In other words, I'm not sure how something can be material if its inclusion could have been inculpatory, in the sense that it would prove that they had a history of questioning what his behavior was. Judge Wilkinson, the answer is, this court's precedent says the only thing that is included in re-examining probable cause is the omitted information that the defendant has shown was recklessly omitted. In other words, all the investigative facts that Detective Lawrence but chose to omit in his application do not get included in a reassessment of probable cause in the Frank's analysis. And this court said precisely that in Lull, if you look at footnote three. So in this case, perhaps with the idea that there was the smoke signal suggesting fire. Well, those same smoke signals were present in the 2016 investigation that turned up no evidence. One thing I want to ask further about here, this comes up to us in an unusual sort of posture. Normally we get these questions, these Franks v. Delaware questions, they come up to us on conditional guilty pleas. At least a good many of them do. This comes to us after a jury verdict. And it seems to me that the difference at least is worth noting because we have a trial and a jury verdict and the depictions here are of child sexual abuse. And based upon the descriptions of some of those pictures of child sexual abuse, they're absolute filth. And the fact that a jury looked at this and found that and found them the individual deserving of conviction, at least there is some value I think to taking into account the effort that has gone into the verdict. And it's just a different situation where you're dealing with a conditional plea. And I'm just not willing to say, oh, well, it doesn't matter. We can just take the jury's verdict and just lay that to one side. It doesn't really matter despite the fact that this probative evidence was put on. And there was probative evidence that was put on as a result of the search. Normally, the Supreme Court has talked not only about preserving the value of warrants, but in terms of the exclusionary rule, they've been talking about increasingly the need to honor the desire of our judicial system to hear and of juries to hear probative evidence. You're saying, well, we're going to circumvent, we're going to throw out this attempt to get a warrant and we're going to disregard the jury verdict. We're going to disregard the value that the criminal justice system places upon probative evidence in a trial. We're going to do all that under a clearly erroneous standard. It just gets to the point that we're running into all kinds of problems. I mean, I agree that the Sixth Amendment right to a jury trial is important, but so was the Fourth Amendment, and hindsight is not probable cause. And, you know, in terms of the conditional plea, I can't speak to the plea negotiate... I agree about the Fourth Amendment, but in many instances, the Fourth Amendment case, the Fourth Amendment problems can be brought up later in the 1983 suit, but they don't necessarily require taking a jury verdict, which heard very probative evidence, and it's of a very damaging nature in terms of the child sexual abuse that went on, and saying, well, no problem, we're going to do it all over again, or whatever. I think that's going against what the Supreme Court is trying to indicate is the value of sparing. Now, the exclusionary rule still holds firm, there's no question about that, but the Supreme Court has said there needs to be a measured and somewhat sparing use of it, and it seems to me we're doing that, we're doing it in the clearly erroneous standard of review, and that's, to me, that's just really troublesome, all the things you're asking us. I would submit, Judge Wilkinson, that a law enforcement officer recklessly deceiving a magistrate into issuing an illegal search warrant is precisely the wrongful, culpable conduct the exclusionary rule is meant to deter from happening in the first place, and my time has expired, but if you'll indulge me for 15 seconds, I will say part of the problem with these search warrants, things go wrong. People get shot, pets die, people die, and so we should just be very careful about adhering to the probable cause of termination. If it's warranted, if there's a reasonable belief there's evidence there, sure. If there's not, do some more investigation until you get some. I'll reserve the rest of my time. Thank you very much. Judge, do you have any? No. Okay, we thank you very much, and Ms. Ray. May it please the court, Amy Ray for the United States. Your honors, the district court did not clearly err in finding that Detective Lowrance did not personally recognize the risk of misleading the magistrate or the judicial officer in this case. The district court made a credibility finding, and the standard is, and this court's decisions in Pulley and in Haas make clear that it is a subjective standard. There's a requirement that this detective have appreciated the risk of misleading the magistrate or the judicial officer when the detective omitted the facts that the defendant asserts were improperly omitted under Franks. In this case, Detective Lowrance testified consistently that he did not believe those facts were relevant, and while we may look at, and the district court did with respect to the 2017 investigation, said I personally would have thought that was relevant, Detective Lowrance testified that he did not believe that it was relevant, and the district court credited his testimony after observing him, after listening to his entire testimony, and that determination is not clearly erroneous if it is reviewable at all. So in then turning to the materiality prong, in terms of the materiality prong, the district court did not err when it found that even if Detective Lowrance had included the information about the 2017 investigation, it would not have defeated probable cause, because probable cause depended, and I want to note that April Glass's report in this case was highly specific. She gave information about where they would find the devices, and not only that, but where on the devices they would find the images. She explained how she came across them. In child pornography cases, we can't be surprised when earlier investigations end up not revealing information. It can be deleted. It can be destroyed. And so in this case, the judge also, Judge Bell, found with respect to materiality, reasonably, that a magistrate or a judicial officer would have recognized that in talking about 2016 and 2017 investigations, that he was investigated. The fact that the detective omitted that he had been convicted or even charged, which he was in the 2012 contact offense, that it's not material because a judge would have inferred reasonably that it didn't yield a conviction. If it had yielded a conviction, that would have been noted. Exactly. Exactly, Judge Wilkinson. So the district court got it right on both intentionality, there was no clear error, and the district court reasonably found that even had the facts been included, it would not have defeated probable cause. On the question of intent, the district court says that Detective Lawrence was, and I'm quoting, was not seeking to mislead the court or obscure his rationale for omitting the challenged information. So it does seem to me that the district court is requiring intentionality and isn't really analyzing the question of intentionality. The district court has collapsed these two separate center prongs under the Frank's analysis and is not separately analyzing intent and recklessness because the summary of the determination on the first prong only really goes to the question of intentionality. Your Honor, I think that the difference is, or the distinction that I would suggest, is reckless disregard in this context requires intentionality. So there's no difference between intentionality and reckless disregard under Frank's? There is, and here's the distinction. The distinction is what the intent, where the intent applies. So for example, if you intend to omit the information, that's intentional, but the intent with respect to reckless disregard is that you intend to mislead, that you know there's a subjective awareness that the facts that you're omitting could reduce, and so the recklessness is the recklessness in omitting facts that you are aware have the potential for misleading. So why isn't that just intent? I can only tell you, Judge Berner, that this is how the cases describe it, and I would refer, Your Honor, to United States versus Haas and United States versus Pulley, and I will acknowledge that in handling this case and in researching, it was interesting to kind of look at the subjective element on this Frank's inquiry with respect to reckless disregard, but of course reckless disregard, and even Borden says this in the Supreme Court, it always requires some subjective awareness of the risk, and that's the same here. So intentionality would mean I intentionally omit and I intentionally mislead, and recklessness means I know there's a risk and I'm reckless with respect to that risk, but there is a subjective awareness requirement, and the district judge in this case made the finding that Detective Lowrance was not aware that these omissions would risk misleading the judicial officer. Well, to be fair, that's not what the district court said. The district court said that the detective was not seeking to mislead or obscure, so was not seeking to mislead or hide his rationale. So I don't find an analysis of reckless disregard. I do see a conflation of the two prongs or the two different subjective intent requirements. I hear what you're saying. I think what you're saying is that our circuit precedent conflates the two and essentially creates one requirement, but that's certainly not what the Supreme Court has said, and we have plenty of precedent that does suggest, including my colleague Judge Wilkinson's opinion in Coakley, which talks about them being two different requirements. They are. I don't think that it is conflated, so I don't think that's true. As I said, I think that on intentionality, there has to be an intentional omission, and there has to be an intent to mislead. And on reckless disregard, there has to be an awareness of the risk of misleading. I will refer this court to United States v. Haas, and what Haas says is, reckless disregard is established by evidence that an officer failed to inform the judicial officer of facts he knew would negate probable cause. So the district court's explanation here, I think, was on all fours with that. And that's United States v. Haas. I don't know what else to say except that I do think there is a difference, and I think the district judge got it here That said, even if the district court had erred in its articulation of the standard, what the district court found, as a matter of fact, was that Detective Lowrance made, at most, an innocent mistake. And it is undisputed, no matter how we articulate the standard, consistently what has been held is that a negligent action is not enough. An innocent mistake is not enough. So the district court did not just find that he didn't intend to mislead. The district court also said it was, at most, an innocent mistake. And that is exactly what this court held in Kolke. In this court said that, at most, the record revealed that the officer in that case believed that the information was irrelevant. And that's exactly what Detective Lowrance testified to in this case, and that's exactly what the district court found wasn't sufficient. The real dividing line here is between negligence and recklessness. Sure, yeah. And that's with respect to the first problem, before you get to the materiality, we can talk about intentionality here, but the real difference is between recklessness and negligence. And the district court's finding nailed that. And it said what this was, at most, was an innocent mistake. And that's pure and simple negligence. And that falls short of the recklessness standard. That's right, Your Honor. And I do think that in this case, that was the question. Nobody suggested that Detective Lowrance met the intentionality prong with intentional conduct, truly intentional conduct. The question was, was it reckless disregard, or was it an innocent mistake? And the court wrestled with that when it described and distinguished United States versus Lowell, which is, in my review, the only case in which this court has applied an inference, although it didn't articulate that it was applying an inference of recklessness. This court in Kolke suggested it probably couldn't be inferred, but if it could be, and this is consistent with other circuits that have held that recklessness could be inferred, it has to be a fact that is clearly critical to the probable cause calculus. And so in Lowell, the district court in this case did consider Lowell, which was also that same question of is it reckless or is it an innocent mistake, and explained why Lowell was so much worse. One could infer recklessness in Lowell, where one could not in this case, because Lowell involved a lie that had just happened that was relevant to the crime itself. The informant had been arrested and charged by the time the officer made his affidavit, in fact had been arrested and charged only a half hour earlier, yet the officer didn't include that information in the affidavit. That is worlds away from a wife who has, estranged wife, whatever, that she has made an allegation highly specific. It seems to me that in terms of this dividing line between recklessness and innocence mistake that the district court's finding here would rest substantially upon his impression of Lawrence's testimony. And to the district court's credit, he didn't just brush this off. He listened to both Brown and Lawrence. And the district court is in a really good, much better position than we are to assess credibility with respect to the affidavit and what was included and what was omitted. And so that's one thing that I think is really important on making this a matter of negligence is that the negligence finding is not only a matter of finding a fact, but it's backed up by the credibility findings. You've got a finding under the standard and then you've the credibility finding. And the other point I was interested in, I'm not sure that it's critical to the case, but so many of these Franks v. Delaware questions seem to me to come up on pleas. And this one comes up after a jury verdict. And the images of child abuse here were really vile. They're really very, very disturbing. And so I'm thinking given the Supreme Court's emphasis upon the value to the judicial system of having probative evidence placed before the jury, that it should make some difference, the fact that this is a product of a jury verdict and that the effort here is to exclude probative evidence of serious child abuse. And that kind of holding would run, would at least catch the Supreme Court's interest. You see what I'm saying? I do. I mean, I don't think that the jurisprudence in the Fourth Circuit, I don't think that this court, I will say though that the exclusionary rule, what the Supreme Court has said over and over again, is that its intent is to deter misconduct, right? The intent of the rule is to deter police misconduct in Franks. That's the intent here. That's why we draw the distinction between negligence and recklessness. And so there has to be evidence. And the district court did make a credibility finding after listening to Detective Lawrence's and observing his demeanor and all of the rest of it. I will just, I don't know if this court has any questions about the other two issues. I have a question, Ms. Ray. Sure. I'm glad you said in the last part that the law doesn't make a distinction in that regard, whether it's a trial or Franks without a trial. But our framers were, they were pretty ingenious in that they didn't trust government. They clearly didn't. I tell lawyers, I said, what rights are there for the government? That's why your job is supposed to be hard because none of the Bill of Rights protects the government. None of it. You know why? Because the government will assert its power. It's the people. So we talk about searches and seizures, the protection is from one's home and property, not what ultimately might be exactly in terms of the prosecution and those questions. Here's a question I had. Under this situation where we can say what the officer said, I know the other allegations and it turned up that it didn't come to fruition, but it could be 20 times someone has done this. You know what? I've been in their home and I've seen this. I know they're doing this. So you don't tell the magistrate, say, well, this is the 20th time that they have done this. At some point, isn't credibility a key to whether or not this is a reasonable intervention in someone's home? If you take that out, is that have to be intentional or is that reckless? Because that's an important distinction. Basically, another officer would have had a different view about putting this in, right? So we know that. So forcing for you is not a reasonable officer because you may have some problems, right? You'd say it's just that individual subjective. That would be subjective. But at what point do you get to the point where we have migrated to the point, wait a minute, this is just, you have to put that in there because otherwise, you see what I'm saying? I do. I mean, I think for one distinguishing fact that I think is really important in this case is there's no evidence that April Glass ever lied, right? That's the distinction between this case and Lowell. I mean, just so I say, it did come to fruition in terms of... Yeah, but even in the past, right, in the past, I mean, there was just, there's no evidence that she was ever telling the false. In fact, the evidence, if you view all of it, suggests he was destroying the evidence conveniently. Of course, Your Honor, I think that at some point, if there were 20 investigations and they were made by the same person and, you know, I'm sure there is there is some place. What I think, though, that is important when we talk about the Fourth Amendment and the framers is one of the things that this, the Supreme Court has held, and it's important when we think about what is the purpose of the exclusionary rule. So yes, it's to protect individual rights, and then also to protect the community. The court has held that there has to be some deterrent value in excluding probative evidence. We don't exclude probative evidence. We do exclude probative evidence, right, all the time when it is police misconduct, and that is appropriate. But where the balance in the Frank's inquiry, and actually, you know, in some ways, the fact that it includes recklessness is, you know, that's something that's in the defendant's favor. It could have come down, the Supreme Court could have said it requires intentional misconduct because that's the purpose of the exclusionary rule. Instead, it includes recklessness, but it includes a recklessness that takes into account the subjective intent of the officer, and that's this court held in Haas and recognized. And so to that extent, yes, I agree that at some point along the way, perhaps the recklessness standard would be satisfied and it would be held material. This case just isn't there. We're not there in this case. It's not that close. And so I think that's the way I would respond to your Honor's question, and I hope that answers. I just, I think it is a balance. I absolutely recognize that the Fourth Amendment is intended to protect defendants' rights and individual rights. Thank goodness they exist. I agree, government is suspect. That is, kind of, was some of the context of the framers, the distrust of England, right? And authority, appropriate. But in this case, on these facts, we're not there. I do have a question about the assessment. Sure. In considering the various assessments to impose on Mr. Glass, the district court did note that Mr. Glass was indigent, that he had recently suffered serious physical impairment. I understand he's also post-retirement age. And so those facts were acknowledged, but then in imposing this not insignificant assessment, the district court said, well, Mr. Glass could pay for it. Why was that appropriate? Your Honor, it was appropriate because under 2259A, the Amy, Andy, Vicki Act, it shall impose an assessment, right? So it's not a may, it's a shall impose an assessment. And then it gives a ceiling of $17,000 or $35,000. Now it does require that the district court consider the 3553A and the 3572 factors. In this case, the district court went through pretty carefully the 3553A factors. He considered the seriousness of the offense. He considered Mr. Glass's medical history that Your Honor just described, referenced. He considered his military service. And he considered his post, he twice violated probation on bond and said, Mr. Glass has shown that he's going to be recidivist. So the difference between the assessments under the Justice for Human Trafficking, the 3014, and the difference in the Amy, Vicki, Vicki, Andy Act is one is required, it's mandatory. And one is also based only on indigency. So the district court adopted the pre-sentence report, which showed that Mr. Glass earned over $71,000 in 2021, the most recent year of his earnings. And he said, yeah, I'm going to find that he's indigent for purposes of 3014, but I'm also going to find that he can pay a modest $5,000. And I say modest, not because $5,000 is easy for all of us to pay. Oh, I see my time is way over. May I finish answering the question, Judge Wilkinson? Thank you. So the district court recognized that based on the $71,000 that he had earned, and he hadn't really gotten in medical treatment, that $50 a month after he got out was reasonable. So he had the opportunity to impose with the four offenses, it would be 35 times three plus 17, well over $100,000 assessment, and he chooses $5,000. And he goes through the 3553A factors. He does it all pretty quickly. If you look at the sentencing transcript, he goes through all the factors. He also knew, by the way, that the defendant didn't want an assessment, so he was considering this. And Chavez Meza makes clear that this court should consider the entire record and just find whether or not it was a reasonable, the district court made a reasonable assessment, and one that would allow this court review. And I think the judge did that in this case, Your Honor. Okay. If Your Honors have no further questions, the government, we request that this court affirm the judgment of the district court. Thank you so much. Ms. Baldwin, you have some rebuttal time here. Thank you, Your Honor. So I'd like to address two points that the government brings up. First is the idea that the Haas case reimagined the reckless disregard standard that is stalwart law in all the criminal law treaties, and that was applied by this court in law. And the language she cites to in Haas comes directly from the Miller v. Prince George case. And it's important because in the Miller v. Prince George case, that statement about reckless disregard can be shown by a cop omitting information he knows would negate probable cause came about because that is exactly what happened in that case, where the plaintiff alleged that the cop omitted the fact that he was seeking an arrest warrant for a white suspect, but omitted the fact the arrest warrant he was seeking was for a black man. So in that case, he knew by omitting the race that that would negate the existence of probable cause. What it did not say, that one way of showing reckless disregard is the only way of showing reckless disregard. And to the extent Haas said that, it contradicts the holding in the lull, and under the prior precedent rule, this court is bound to follow that earlier holding. Reckless disregard requires a subjective awareness that a risk accompanies omitting this information from the warrant, not an awareness that the risk will actually materialize. But that is what the district court held the defendant to in this case, and why the district court's findings are clearly erroneous. Now second, on the point where the government relies on April's details within her allegation itself as sufficient corroboration. The government doesn't supply any authority for the notion that an unreliable source can generate probable cause by supplying details, and common sense suggests otherwise. Just think of CHAT-GPT. We all know it hallucinates cases, and we all know that it can spit out very compelling factual patterns, even quote the holding. But it is reckless for a lawyer to rely on that, and not doing the bare minimum of checking and seeing if that case exists. Detective Lawrence had opportunities and investigative steps he could have taken. That tip included information such as usernames. They could have set up a sting to use the usernames to try and elicit him into a conversation. He could have gotten an administrative subpoena with a lower requirement than probable cause to verify some of these details. Other people lived or visited that house they could have interviewed. None of those was taken. I thought he did investigate April's credibility as a witness. I'm saying Detective Lawrence did not investigate the details the government seeks to rely on to corroborate her allegation, and absent the corroboration of details in her allegation, a reasonably prudent person would not credit her latest allegation. And it goes to the recklessness, the fact that most of the investigation that Detective Lawrence did do into April turned up problematic things that he elected to omit from the magistrate's consideration, such as the fact that she had the misdemeanor shoplifting charges under investigation for another. She told him in communication that she had gotten Mr. Glass in trouble for an assault in Yadkin County. He called up Yadkin County and was like, hey, what about this arrest? They're like, we have no idea what you're talking about. He did look into April. There were many, many red flags. And instead of either doing more investigative work or at least doing an honest, truthful presentation of what he magistrate, instead he submitted a deceptively drafted affidavit. And so here I would submit this is worse than lull, because here we have an affidavit where you can see, and it's just like the Ninth Circuit Perkins case, where this officer cherry-picked out the facts he found to bolster probable cause while omitting those facts that he found out that dispelled the suspicion that we would ask this court to report. Everything you've said was at odds with what the district court found. And the district court was clearly erroneous for finding that. Okay, thank you. Thank you very much. All right, I wanted to thank you. I see you're a court-appointed FPD and I really would like to express the appreciation of the court for your argument. Ms. Wray, we're always pleased to have you as well. Both of you have done a fine job. And we'd like to adjourn court and come down and agree counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Roger L. Gregory, Nicole G. Berner